IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LOUIS W. ARBEE,

    Petitioner,

v.

SCOTT KERNAN, Secretary of the California Department of Corrections and Rehabilitation, and RONALD DAVIS, Warden of San Quentin State Prison,

    Respondents.

No. C 17-05962 WHA

**ORDER DENYING PETITION FOR HABEAS CORPUS**

## INTRODUCTION

Petitioner Louis Arbee is a state prisoner serving a sentence of 13 years and eight months in custody for robbery with a firearm enhancement. He seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254. For the reasons stated below, the petition is **DENIED**.

## STATEMENT

The following facts are taken from the California Court of Appeal opinion. On March 22, 2014, at 10:23 p.m., Simon Negasi called the police to report that his 49ers hat and cell phone had been taken from him while he exited a San Francisco Muni transit bus. The tape recording of his 911 call was played for the jury. According to his recorded account of the incident, three "black dudes, with like ski masks" took his hat and his phone while he exited from the rear of the bus. He said that "they had a gun" and that the three men remained on the bus after he got off. Negasi repeatedly stated he did not want to meet with police and just

wanted to ensure that the men did not hurt anyone. He did, however, give the dispatcher his girlfriend's cellphone number and agreed to speak to the police if they had any further questions. After receiving the report of the incident, several officers responded to Sixth and Bryant Streets where the bus had been stopped. Officers located and arrested the three suspects, which included petitioner Louis Arbee. Officers observed a black handgun in petitioner's waist band and seized it. The handgun was loaded and in working condition. From petitioner's coat, officers removed a 49ers hat matching Negasi's description. The other two suspects taken into custody were juveniles. A second loaded gun was retrieved from one of the juveniles. No phone matching Negasi's description was found on petitioner or the other two suspects.

Thirty minutes after petitioner's arrest, an officer was dispatched to Negasi's home to transport him to the police station to identify the suspects. The officer testified that Negasi reported that he was approached by three men as he stood waiting to exit the bus. One of the men took his hat from behind him, and when he turned to see who had taken it, the man took the ear buds from his ears along with his cell phone. Negasi told the officer that when he reached to take his phone back, the man pulled a gun and said "Don't try it." Negasi told the officer he could not see the barrel of the gun because it was tucked into the man's sweater. Negasi said the person was wearing a mask so he was unable to see his facial features. He claimed he ran out of the bus "in fear of his life." The officer also testified that the victim was "very scared; so much so that he didn't want to initially complete the cold show." He made statements like "I don't want to do this because I ride the bus every day with my daughter and I'm afraid they are going to retaliate."

At trial, over defense objections, recordings of six jailhouse phone calls were admitted into evidence. In one call petitioner complained about being in custody for simply taking another man's hat. In another call, he assumed he was in jail because of the hat, then added "But they ain't seen me show nothing. I had the little one, they couldn't see nothing." In a different call he stated, "All I got to beat is the gun. And I'm comin' home . . . . The gun ain't showin' . . . . I just got caught with it. That's the only ugly thing."

The entire incident was captured on a surveillance camera inside the bus and the videotape was played for the jury. The video of the incident shows the victim facing the back door of the bus as petitioner approached from behind. As the victim started to exit, petitioner grabbed his hat. The victim then turned to face petitioner and reached towards him. Petitioner appeared to transfer the hat to his right hand and reach towards his waist with his left hand as he squared to face the victim. The victim immediately put his hands up and backed away from petitioner and off the bus while continuing to display his hands to petitioner. The video did not show anyone taking the victim's earbuds or phone.

In October 2014, a six count information was filed against petitioner in San Francisco Superior Court alleging the following: (1) first-degree robbery, (2) an enhancement for personal use of a firearm, (3) unlawful possession of a firearm by a prohibited person under the age of 30, (4) carrying a concealed firearm, (5) carrying a loaded weapon, (6) wearing a mask as a disguise, and (7) resisting arrest. Trial commenced in January 2015. The jury found petitioner guilty on all counts except for resisting arrest. The trial court sentenced petitioner to thirteen years and eight months in custody (CT 25–27, 135–40, 222–23).

The state appellate court affirmed the judgment and denied petitioner's appeal. The California Supreme Court denied review without comment. This federal habeas petition, which challenged only the robbery and firearm enhancement charges, followed (Dkt. No. 1, Pet. Exhs. A–B).

**ANALYSIS**

A district court may not grant a habeas petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407–09 (2000), while the second prong

applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412–13. A state court decision is an "unreasonable application of" Supreme Court authority if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.[1]

### 1. SUFFICIENCY OF THE EVIDENCE.

Petitioner claims that he is entitled to federal habeas relief because insufficient evidence supported his robbery conviction and firearm enhancement. Evidence is constitutionally sufficient to support a conviction when, upon "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. Importantly, "*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam). On habeas review, a federal court may only overturn a state court decision rejecting a sufficiency of the evidence challenge "if the state court decision was 'objectively unreasonable.'" *Ibid.* (citation omitted).

---

[1] Where, as here, the California Supreme Court denied review of a petitioner's direct appeal without comment, the Court must look to the last reasoned decision, the state appellate court's decision, as the basis for the state court's judgment. *Shackleford v. Hubbard,* 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

4

"[T]he only question under *Jackson* is whether the finding was so insupportable as to fall below the threshold of bare rationality." *Id*. at 656.

### A. Robbery.

Under California law, "[r]obbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Cal. Penal Code § 211. The victim's fear "do[es] not need to be extreme for purposes of constituting robbery." *People v. Ramos*, 106 Cal. App. 3d 591, 602 (1980), *overruled on other grounds by People v. Scott,* 9 Cal. 4th 331, 353, n.16 (1994). "The element of fear for purposes of robbery is satisfied when there is sufficient fear to cause the victim to comply with the unlawful demand for his property." *Id*. at 601–02.

The state appellate court found that petitioner's crime began as a theft when he took Negasi's hat but that "the theft became robbery when the victim turned to face [petitioner] and [petitioner] appeared to show the victim a gun in his waistband. The victim's reaction, as seen on the video, unmistakably reflects his fearful retreat with hands raised when [petitioner] appears to display a gun in his waistband." Petitioner argues, as he did in state court, that Negasi's words and demeanor during the 911 call following the incident belie any claim of fear. According to petitioner, Negasi was "quite calm and collected" on the 911 call "with no hint of fear in his voice." The state appellate court rejected this argument as "not supported by the record," finding that the 911 recording "reflects heavy breathing and cracking in the victim's voice, indicating a heightened emotional state as would follow a fearful event" (Resp. Exh. 8 at 7–8).

The state appellate court reasonably concluded that petitioner's robbery conviction was supported by substantial evidence. As described above, the interaction between Negasi and petitioner was captured on surveillance cameras. Having carefully reviewed the video, the recorded 911 call, the arguments of the parties, and the other relevant portions of the record, this order concludes that the state appellate court's holding that there was substantial evidence of robbery was not unreasonable.

5

### B. Use of a Firearm.

Through counsel, petitioner admitted at trial that he possessed a gun at the time he stole Negasi's hat (RT 271:13–272:1). He argued, however, that he did not "use" the gun in violation of Section 12022.53(b) of the California Penal Code, which statute provides for additional punishment for any person who, in the commission of specified offenses, "personally uses a firearm." Under the penal code, "to use" a firearm includes "to display a firearm in a menacing manner." Cal. Penal Code § 1203.06. "Use" requires something more than merely being armed, *People v. Chambers*, 7 Cal. 3d 666, 672 (1972), but whether a gun is "used" in an offense "is broadly construed within the factual context of each case," *Alvarado v. Superior Court*, 146 Cal. App. 4th 993, 1002 (2007). Accordingly, "when a defendant deliberately shows a gun, or otherwise makes its presence known, and there is no evidence to suggest any purpose other than intimidating the victim (or others) so as to successfully complete the underlying offense, the jury is entitled to find a facilitative use rather than an incidental or inadvertent exposure." *Id.* at 1003–04.

Petitioner argues that the video did not show him "displaying the gun" and that Negasi "calmly told the [911] dispatcher" that petitioner had a gun without saying that the gun was pointed at him or shown to him. He further argues that while Negasi can be seen on the video abruptly backing up with his hands in the air after turning around to confront petitioner, there is no way to know what prompted Negasi's gesture and retreat. One possibility, petitioner argues, is that Negasi just happened to see the gun without petitioner intending to show it, a possibility supported by the jury's question as to whether there was a "formal definition of the term 'display'" and whether Negasi would have needed to see the "metal of the gun." After being presented with these same arguments, however, the state appellate court rejected petitioner's sufficiency of the evidence claim. In addition to finding that the video showed petitioner "reach towards his waist with his left hand as he squared to face the victim," the state appellate court found as follows (Resp. Exh. 8 at 3, 8):

> [T]he video clearly shows that [petitioner's] conduct stopped the victim in his tracks and caused him to put his hands up and retreat. It is also undisputed that [petitioner] had a gun tucked into his waistband at the time of his arrest. Although the gun is not visible

6

> in the video, the victim told the police in the 911 call that
> [petitioner] had a gun. This evidence overwhelmingly supports the
> finding that [petitioner] used the gun in the commission of the
> robbery.

Upon careful consideration of petitioner's arguments and the relevant parts of the evidentiary record, this order cannot conclude that this factual determination is "objectively unreasonable in light of the evidence presented in the state-court proceeding." *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citation omitted).

### 2. CONFRONTATION CLAUSE VIOLATION.

Negasi did not appear for any proceeding in petitioner's case. Prior to trial, petitioner moved to exclude all evidence of the victim's statements to the police, with the exception of the 911 call, on the grounds that the statements were inadmissible hearsay and their admission would violate petitioner's confrontation right under *Crawford v. Washington*, 541 U.S. 36 (2004). Although the trial court excluded the statements Negasi made at the "cold show" and his subsequent written statement, it allowed a police officer to testify to the description of the incident that Negasi provided during the officer's initial interview at Negasi's apartment.

On direct review, the state appellate court agreed with petitioner that Negasi's statements to the officer at his apartment were testimonial and thus inadmissible under *Crawford* and its progeny. Nevertheless, in applying the harmless-error analysis under *Chapman v. California*, 386 U.S. 18 (1967), the state appellate court concluded that the error was harmless because there was "no reasonable doubt that the jury would have convicted [petitioner] of both robbery and the gun enhancement regardless of any of the evidence that may have been improperly admitted" (Resp. Exh. 8 at 7). The state appellate court's determination that the constitutional error was harmless under *Chapman* constitutes an adjudication on the merits that is subject to the highly deferential standard of review under the Antiterrorism and Effective Death Penalty Act. *Davis v. Ayala*, — U.S. — , 135 S. Ct. 2187, 2198 (2015).

Whether a *Crawford* violation is harmless in a particular case depends on the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall

7

1   strength of the prosecution's case. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). Here,
2   the state appellate court examined the impact of the erroneous admission of the officer's
3   statements by express reference to the correct federal constitutional standard. The state
4   appellate court then examined the other compelling evidence of the robbery and of petitioner's
5   use of the firearm, most importantly the surveillance video, and concluded that this evidence
6   "overwhelmingly support[ed] the finding that [petitioner] used the gun in the commission of the
7   robbery" (Resp. Exh. 8 at 8). Under the highly deferential standard of review applicable here,
8   the state appellate court's harmless-error determination was not objectively unreasonable.

9   Petitioner argues that the state appellate court's application of *Chapman* was objectively
10  unreasonable because the officer's testimony was the "crux" of the case, as only the officer
11  testified that Negasi was afraid and that petitioner pointed the gun within inches of Negasi's
12  chest. Moreover, petitioner argues, the import of the testimony was shown through the
13  prosecutor's discussion of it during closing arguments and the jury's request for a read-back of
14  the officer's testimony.

15  These arguments fail to persuade. As discussed above, the state appellate court
16  reasonably found that the admissible evidence established Negasi's fear and petitioner's gun
17  use, even in the face of petitioner's denials of the charges on recorded jail calls and the jury's
18  question regarding the definition of "display." To some extent, the jury could evaluate Negasi's
19  credibility even without the benefit of cross-examination because the surveillance video itself
20  impeached his statements that petitioner took his cell phone and pointed the gun inches away
21  from his chest. Finally, the prosecution did not make the officer's testimony the linchpin of its
22  case. Rather, a substantial portion of the prosecution's closing argument involved replaying the
23  surveillance video for the jury and arguing as to how the jury should understand and perceive its
24  contents. The erroneously admitted testimony was therefore cumulative and it was reasonable
25  for the state appellate court to find the *Crawford* error harmless beyond a reasonable doubt.

26  Contrary to petitioner, our court of appeals' decision in *Ocampo v. Vail*, 649 F.3d 1098
27  (9th Cir. 2011), does not demonstrate the unreasonableness of the state appellate court's
28  harmless-error determination. In *Ocampo*, a jury found the petitioner guilty of first-degree

8

murder. The primary issue at trial was whether or not the petitioner was present at the scene of the crime. *Id.* at 1099–1100. Witnesses identified a gang member named Jose Hernandez as one of the individuals running from the crime scene. When questioned by police, Hernandez conceded that he had been present at the murder but named the petitioner as the shooter. Hernandez also implicated two other witnesses, Baldemar Vela and Mesial Vasquez, who corroborated Hernandez's story. Hernandez and Vela testified at trial and were the only prosecution witnesses who claimed to have seen the petitioner at the scene. Vasquez, by contrast, did not testify. Detectives were nevertheless allowed to testify that Vasquez's statements to police corroborated Hernandez's account of the shooting. *Id.* at 1100.

In reviewing the petitioner's habeas claims, our court of appeals emphasized that Vela and Hernandez were problematic witnesses. At trial, Vela disputed law enforcement's claim that he had readily identified the petitioner as the shooter. Hernandez, in turn, agreed to testify for the government in exchange for a second-degree murder plea agreement with a recommended sentence of 244 months. And, while in custody, Hernandez had told two detention officers that he himself was the shooter. Given these evidentiary weaknesses, the prosecution emphasized during closing argument that Vasquez "confirmed" what had been said by Hernandez. *Id.* at 1100–05.

After concluding that the detectives' testimony regarding Vasquez's statements violated the Confrontation Clause, our court of appeals analyzed whether or not the testimony's introduction amounted to harmless error. The decision explained that Hernandez's and Vela's testimony was "internally contradictory, inconsistent with each other's, and indeterminate." *Id.* at 1114–15. Moreover, the jury had reason to doubt Hernandez's testimony because (1) he was an accomplice with a plea agreement predicated on testifying against the petitioner, (2) other witnesses had contradicted the central facts of Hernandez's story, and (3) Hernandez himself had confessed to being the shooter on two occassions. *Id.* at 1115–16. Our court of appeals concluded that, "[g]iven these considerable weaknesses in the prosecution's case, the testimony regarding Vasquez's statements, emphasized by the prosecutor's references to Vasquez at closing, cut to the heart of [the petitioner's] defense," and that without Vasquez's out-of-court

9

statements "there might well have been no conviction." The court therefore concluded that the statements' erroneous admission was prejudicial. *Id.* at 1117.

The facts here are markedly different. Unlike in *Ocampo*, where absent the erroneously-admitted evidence the jury would have only heard the relevant testimony from witnesses with severe credibility issues, here, compelling evidence of the robbery and of petitioner's use of the firearm — the surveillance video and 911 call — existed independent of the hearsay statements. The circumstances presented in this case are therefore more akin to those in *Harrington v. California*, 395 U.S. 250, 254 (1969), where the Supreme Court concluded that a Confrontation Clause violation was harmless because the case against the petitioner was "overwhelming" and the tainted evidence was cumulative. Accordingly, a writ will not issue on this claim.

### 3. ADMISSION OF JAILHOUSE PHONE CALLS.

Petitioner next claims that the trial court abused its discretion in admitting prejudicial evidence of petitioner's jailhouse phone calls. He argues that he is entitled to federal habeas relief because the admission of the jail calls "render[ed] the trial so fundamentally unfair as to violate federal due process" (Dkt. No. 1-1 at 36) (quoting *Jeffries v. Blodgett*, 5 F.3d 1180, 1192 (9th Cir. 1993)).

In reviewing petitioner's claim of reversible error, the state appellate court held that to the extent that petitioner admitted in the calls that he had taken Negasi's hat and was carrying a firearm, the evidence "undoubtedly was relevant and admissible." The state appellate court further noted, however, that certain other statements in the phone calls had "little if any probative value" and that the "potential prejudice is clear." For example, the court failed to redact statements in which petitioner expressed anger towards the victim and the bus driver for reporting the crime. In one call petitioner stated, referring to the bus driver, "I always see his bitch ass" and "he better hope I get a car by the time I get out." The call's other participant responded, "Yeah and OR you out. Hope them fucking guns is all clean, no bodies on that thing." With respect to the victim, petitioner suggested that they will know if he was the snitch because "If he did he's going to come to court." The state appellate court found that "[t]he

failure to redact those statements may well have been an abuse of discretion." Nevertheless, the state appellate court concluded:

> Because the entire interaction between [petitioner] and the victim was distinctly and clearly recorded on video cameras on the bus, the evidence of [petitioner's] guilt is overwhelming. There can be no reasonable doubt that the jury would have convicted [petitioner] of both robbery and the gun enhancement regardless of any of the evidence that may have been improperly admitted.

Petitioner has not shown that the state appellate court's decision was contrary to, or an unreasonable application of, clearly established federal law. The undersigned is confident that the admission of the jail calls did not violate due process and that the calls would have sailed into evidence. Regardless, under AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair do not warrant federal habeas corpus relief if not forbidden by "clearly established Federal law" as laid out by the Supreme Court. *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (quoting 28 U.S.C. § 2254(d)). The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Ibid.* Absent such "clearly established Federal law," this order cannot conclude that the state appellate court's ruling was an "unreasonable application." *Ibid.* (citing *Musladin*, 549 U.S. at 77). Petitioner is therefore not entitled to relief on this claim.

### 4. JURY INSTRUCTION ON LESSER-INCLUDED OFFENSES.

Finally, petitioner argues that, with respect to the robbery charge, the trial court's failure to instruct the jury on the lesser included offenses of grand theft and petty theft rendered the trial so fundamentally unfair as to violate due process. The state appellate court found no error in the trial court's refusal to instruct on the lesser-included offenses (Resp. Exh. 8 at 9):

> [Petitioner] contends that because the evidence of the victim's fear was "ambiguous at best" the court erred in failing to instruct o[n] the lesser included offenses of grand theft of a person and petty theft. However, given the evidence discussed above, the jury could not reasonably have found an absence of fear and there was no basis for an instruction on the lesser offense. Were there any error, it undoubtedly was harmless.

Due process does not require that an instruction be given unless the evidence supports it. *Hopper v. Evans*, 456 U.S. 605, 611 (1982). While the failure to instruct on a lesser-included

11

offense in a capital case is constitutional error if there was evidence to support the instruction, *Beck v. Alabama*, 447 U.S. 625, 638 (1980), a state trial court's failure to instruct on a lesser-included offense in a non-capital case does not present a federal constitutional claim, *Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000). Although under *Solis* "the defendant's right to adequate jury instructions on his or her theory of the case might, in some cases, constitute an exception to the general rule," our court of appeals suggested that there must be substantial evidence to warrant the instruction on the lesser-included offense. *See id*. at 929–30.

Here, the state appellate court determined, as a matter of state law, that the evidence at trial did not support an instruction on grand theft or petty theft. This finding is entitled to a presumption of correctness on federal habeas review. *See Menendez v. Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005). Because petitioner has not overcome that presumption of correctness, the state appellate court's rejection of the claim was not "contrary to," or "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

## CONCLUSION

For the reasons set forth above, all claims in petitioner's Section 2254 petition are **DENIED**. A judge may grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the certificate must indicate which issues satisfy this standard. 28 U.S.C. § 2253(c). Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy Section 2253(c) is straightforward: "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner has not shown a certificate is warranted and one will not be granted. Judgment will be entered separately.

**IT IS SO ORDERED.**

Dated: June 3, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

12